## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

**WOODY HAMILTON**                                                                **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 4:09CV-P42-M**

**PENDLETON DECKER et al.**                                                **DEFENDANTS**

### MEMORANDUM OPINION and ORDER

Plaintiff, Woody Hamilton, filed a *pro se*, *in forma pauperis* complaint pursuant to 42

U.S.C. § 1983 against the following employees of the Grayson County Detention Center:

Corrections Officer Pendleton Decker; Medical Tech Debbie Webb; and Nurse Rita Wilson. On

initial review, the Court allowed Plaintiff's individual-capacity excessive-force claim against

Defendant Decker and his individual-capacity Eighth Amendment claims against Defendants

Webb and Wilson to go forward. Defendants have filed a motion for summary judgment

(DN 25). Plaintiff has not responded. The matter being ripe, after due consideration, the Court

will grant Defendants' motion.

### I. FACTS

At the time pertinent to the complaint, Plaintiff was incarcerated at the Grayson County

Detention Center (GCDC). According to the complaint, on November 16, 2008,[1] Plaintiff fought

with another inmate over a card game, prompting Defendant Decker to enter the cell and "jump

on plaintiff's back." Plaintiff further stated that Defendant Decker used excessive force by

taking Plaintiff's left arm and pushing it so far behind his back that he broke Plaintiff's left

shoulder. Plaintiff stated that he was eventually taken to medical where he was seen by

---

[1] The complaint actually states the date as November 16, 2009. However, it is clear from
both the attachments to the complaint and the fact that the complaint was filed in May 2009 that
Plaintiff meant to identify the year as 2008.

Defendant Webb. He alleges that she violated his Eighth Amendment rights when she diagnosed him with having no injury to his arm and sent him back to his cell. He further states that no medical treatment was given to him until the afternoon of the next day when he was sent to the hospital. He further states that Defendant Wilson violated his Eighth Amendment rights by interfering with treatment from his doctor by not giving him his prescribed medication, specifically by stopping his pain medication prescribed by the doctor for his left shoulder. He states that Defendant Wilson alleged that she did so because Plaintiff was hiding his medication, which he denies.

## II. <u>ANALYSIS</u>

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing

that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.*

A.      **Excessive force claim against Defendant Decker**

Defendants state in their memorandum in support of their motion that according to GCDC records, Defendant Decker became aware of a disturbance between Plaintiff and another inmate, Jocouis Guinn, at approximately 10:20 p.m. on November 16, 2008. Defendant Decker

saw Plaintiff strike Guinn then go to the floor holding Guinn in a headlock while striking him in the face. Defendant Decker then entered the cell and separated the two inmates, which included restraining Plaintiff's left wrist to prevent him from striking Guinn. Defendant Decker's actions were taken to preserve and maintain order and safety at GCDC. Defendants attach a GCDC incident report dated November 16, 2008, detailing that Defendant Decker discovered Plaintiff and Guinn fighting and that Defendant Decker restrained Plaintiff's arm to stop him from hitting Guinn. Defendants also attach the affidavit of Defendant Decker, who avers that on November 16, 2008, he was the Deputy Jailer at GCDC and as such he was responsible for overseeing the orderly operation of GCDC, which includes the safety of the staff and inmates. He further avers that on that date he observed Plaintiff act as an aggressor and initiate a physical altercation with Guinn inside a cell/pod containing other inmates. He avers that as a result an instantaneous decision had to be made as to the best manner in which to respond for the well being of GCDC inmates and thus he decided to separate Plaintiff and Guinn by restraining Plaintiff who was the aggressor; in doing so it was necessary to restrain Plaintiff's left wrist to prevent him from striking Guinn and Defendant Decker. He further avers that "[m]y instantaneous reaction to a volatile situation was met with the necessary force to gain control of the situation, to prevent an escalation of the situation, and to protect the inmates . . . ."

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain," including inflictions of pain that "are totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations and internal quotation marks omitted). The Sixth Circuit has held that "in the prison context, good faith use of physical force may be necessary to maintain prison security and discipline." *Williams v. Browman*, 981

F.2d 901, 905 (6th Cir. 1992) (per curiam). The Supreme Court has explained that

> [w]here a prison security measure is undertaken to resolve a
> disturbance . . . that indisputably poses significant risks to the
> safety of inmates and prison staff, we think the question whether
> the measure taken inflicted unnecessary and wanton pain and
> suffering ultimately turns on whether force was applied in a good
> faith effort to maintain or restore discipline or maliciously and
> sadistically for the very purpose of causing harm.

*Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted).

Plaintiff has offered no proof that it was Defendant Decker who broke his shoulder and not inmate Guinn. Nevertheless, even assuming that it was Defendant Decker who caused the injury, Defendant Decker is entitled to summary judgment in his favor. Clearly a need existed at the time of Plaintiff's assault on Guinn for the application of force to restrain Plaintiff from further violent conduct. The amount of force employed under the circumstances does not appear excessive in light of the uncontroverted statements that Plaintiff was violent and attempting to continue to strike Guinn. If Plaintiff's shoulder was broken in an attempt to subdue him, that action by Defendant Decker was made necessary by Plaintiff's violent behavior. The Court finds that Defendant Decker did not violate the Eighth Amendment.

**B.     Medical treatment claims**

With regard to Plaintiff's medical treatment following the altercation, Defendants assert that the GCDC medical progress notes show that Plaintiff complained of left shoulder pain after an altercation with an inmate the previous night and that, at that time, it was noted that Plaintiff's left shoulder appeared to be misaligned and that he was to be sent to the emergency room for evaluation and treatment. Defendants state that Plaintiff was treated on November 17, 2008, at 3:26 p.m. in the emergency department of the regional medical center for complaints of left

shoulder pain and that an x-ray taken there revealed a fracture of the left proximal humerus and Plaintiff was given a prescription for Vicodin (Hydrocodone). However, Defendants state that on November 18, 2008, Plaintiff attempted to hide his hydrocodone rather than consuming it and as a result his medication was discontinued, although actually the records show that Plaintiff continued to receive his medication.

Defendants state that on November 21, 2008, Plaintiff was treated at Twin Lakes Orthopaedics and Sports Medicine by Dr. Casey Starsiak, where he received a CT scan of his left shoulder which revealed a comminuted fracture of the left humeral head; Plaintiff was given a prescription for Vicodin (Hydrocodone). A November 25, 2008, progress note reflected that Dr. Starsiak advised that Plaintiff would be sent to Louisville to an orthopaedic specialist. After several attempts to set up the appointment, Defendant Wilson was able to make an appointment for Plaintiff on December 18, 2008. On December 16, 2008, Plaintiff submitted a grievance asserting that his shoulder was broken, that it hurt, that he was supposed to take medication every six hours, but that "Miss Debbie" was not giving him medication every six hours. Defendant Wilson responded to the grievance the next day advising Plaintiff that his pain medication was prescribed for every six hours as needed, therefore he had to request the medication, and that it would not be given more than every six hours. On December 18, 2008, he was treated by UPA Orthopaedic Associates which referred him to physical therapy and gave him a prescription for Lortab. Plaintiff left GCDC on December 24, 2008. Medical records show that Plaintiff received anywhere between one and five doses of Vicodin every day between November 17 and December 24.

To establish an Eighth Amendment violation premised on inadequate medical care, a

prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp*., 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). In other words, a court will generally not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).

Such is the case here. The documents attached to Defendants' motion establish that Plaintiff was seen by GCDC medical personnel immediately after the fight occurred and it was determined that Plaintiff would be sent to the emergency room for evaluation. In fact, he was seen in the emergency room the next afternoon where his left shoulder was x-rayed. He was

diagnosed with a fracture; prescribed a left shoulder immobilizer; prescribed Vicodin; and referred to Dr. Starsiak "next week."  Also attached to Defendants' motion is a GCDC incident report from November 18, 2008, describing Plaintiff's pretending to have his "meds" in his hand when in actuality he had dropped the hydrocodone on the floor.  According to that incident report, when Defendant Wilson became aware of the situation, she said to discontinue the medication.  Nevertheless, the medical records provided by Defendants show that Plaintiff received between one and five doses of Vicodin every day between November 17 and December 24, when he left GCDC custody.

On November 21, 2008, Plaintiff was treated at Twin Lakes Orthopaedics and Sports Medicine by Dr. Starsiak, where he received a CT scan of his left shoulder which revealed a comminuted fracture of the left humeral head; Plaintiff was given a prescription for Vicodin (Hydrocodone).  A November 25, 2008, progress note stated that Dr. Starsiak advised that Plaintiff would be sent to Louisville to an orthopaedic specialist.  On December 18, 2008, he was treated by UPA Orthopaedic Associates which referred him to physical therapy and gave him a prescription for Lortab. Thus, from the time he was injured, late at night on November 16, 2008, until he left GCDC on December 24, 2008, a period of 37 days, Plaintiff was seen by GCDC medical staff, the emergency room, and two private doctors, including an orthopaedic specialist in Louisville; he had been x-rayed; he had been given a CT scan; and he had received pain medication every day.  The Court finds that Defendants Webb and Wilson were not deliberately indifferent to a serious medical need, and thus, no violation of the Eighth Amendment occurred. *See Westlake v. Lucas*, 537 F.2d at 860 n.5.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Defendants are entitled to judgment as a matter of law. The motion for summary judgment (DN 25) is **GRANTED**.

Date:

cc:     Plaintiff, *pro se*
         Counsel of record
4414.009